FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 2 3 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
12 CV 2179 (CBA)

CLIVE CAMPBELL,

          Plaintiff,

-against-

NEW YORK CITY; N.Y.C. POLICE DEPARTMENT,
COMMISSIONER; N.Y.C. DEPARTMENT OF
CORRECTIONS, COMMISSIONER; LIU LONG
ISLAND UNIVERSITY HOSPITAL, Brooklyn Campus;
POLICE OFFICER OMAR RACKOFF, 77th PRECINCT;
POLICE SERGEANT MICHAEL MALONE, 77th
PRECINCT; JOHN DOE #1, Long Island University
Attending Physician; JOHN DOE #2, Rikers Island Prison
Attending Physician; JOHN DOE #3, Rikers Island Prison
Correction Officer,

          Defendants.
----------------------------------------------------------x

**Amon, Chief United States District Judge.**

In this *pro se* action brought pursuant to 42 U.S.C. § 1983 the plaintiff alleges that he was denied adequate medical care. The plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is granted. For the reasons discussed below, the plaintiff's claims against the City of New York, the New York City Police Department ("NYPD"), the New York City Department of Correction ("NYDOC"), L.I.U. Long Island University Hospital Brooklyn Campus ("the Hospital"), and JOHN DOE #1, Long Island University Attending Physician, are dismissed. The plaintiff's claim will proceed against the remaining defendants.

## BACKGROUND

The plaintiff alleges that he was arrested on March 16, 2012 by Omar Rackoff, a police officer with the 77th Precinct. (Compl. at ¶ 1.) He alleges that at the time of his arrest, Rackoff

1

took his glycoma [sic] drops. (Id. ¶ 2.) When the plaintiff informed Rackoff that he needed his eye drops, Rackoff stated that "he is the law and refused to give the drops back to [plaintiff]." (Id.) Two days later, while still in police custody, the plaintiff was taken to a hospital for medical treatment, where the attending physician allegedly prescribed the wrong medicine for his glaucoma. (Id. ¶¶ 13, 15.) That same day, the plaintiff was transferred to Rikers Island Correctional Center. The plaintiff alleges that at Rikers he was denied the correct prescription eye drops and was forced to take the "incorrect" medicine from March 19, 2012 until March 24, 2012, when he made bail. (Id. ¶¶ 26, 34.) The plaintiff alleges that he has late stage glaucoma and that the initial deprivation of his medication, as well as the subsequent use of the wrong medication, aggravated his condition and caused further damage to his eyes. (Id. ¶ 17.) The plaintiff also alleges that the City of New York failed to properly train its employees to protect his right to medical care. (Id. ¶ 6, 15.) The plaintiff seeks monetary damages.

## STANDARD OF REVIEW

When reviewing a *pro se* litigant's complaint, a court must construe it liberally and interpret it as raising the strongest arguments it suggests. See Chavis v. Chappius, 618 F.3d 162, 171 (2d Cir. 2010); Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-93 (2d Cir. 2008). However, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

## DISCUSSION

The Court has reviewed the complaint and finds that the claims asserted by the plaintiff against the City of New York, the NYPD, the NYDOC, LIU Long Island University Hospital

Brooklyn Campus, and JOHN DOE #1, Long Island University Attending Physician, must be dismissed because, for various reasons described below, the plaintiff cannot maintain a cause of action against these defendants under 42 U.S.C. § 1983. The claims against the City of New York, NYPD Officer Rackoff, NYPD Sergeant Malone, JOHN DOE #2, Rikers Island Prison Attending Physician, and JOHN DOE #3, Rikers Island Prison Correction Officer, shall go forward.

A.  City Agencies

The plaintiff names as defendants in this action the "N.Y.C. Police Department, Commissioner" and the "N.Y.C. Department of Corrections, Commissioner." It is unclear whether the plaintiff intends to name the respective agencies as defendants, or whether he intends to name the Commissioner of each agency in his individual capacity. The Court will address both possibilities.

To the extent that the plaintiff intends to name the Commissioners in their individual capacities, the complaint does not allege that they had any direct involvement with, knowledge of, or responsibility for the alleged deprivation of plaintiff's rights. It is settled law in the Second Circuit that a plaintiff bringing a civil rights action for money damages must demonstrate each defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1991); Kneitel v. Hynes, 2011 WL 2747668, at *2 (E.D.N.Y. 2011). Liability under § 1983 cannot be generally imposed on a supervisor solely based on his position because there is no respondeat superior or vicarious liability under § 1983. See Iqbal, 556 U.S. 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has

3

violated the Constitution."); Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003). Instead, a plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). Because the complaint does not mention any action taken by the Commissioners that might have contributed to the plaintiff's alleged injuries, they cannot be held liable under § 1983. Accordingly, the claims against the Commissioners are dismissed.

To the extent that plaintiff seeks to name the agencies as defendants, his claims must also be dismissed. The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter § 396. The NYPD and NYDOC are non-suable agencies of the City of New York. See Maier v. New York City Police Dep't, 2009 WL 2915211, at *2 (E.D.N.Y. 2009) (dismissing claims against the NYPD and NYDOC as non-suable entities); Wingate v. City of New York, 2008 WL 203313, at *2 (E.D.N.Y. 2008) (holding that 113th Precinct of NYPD is not a suable entity). Accordingly, the plaintiff's claims against the NYPD and NYDOC are dismissed.

B. The City of New York

"In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant such as the City of New York, a plaintiff must show the existence of an officially adopted policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right." Steele v. City of New York, 2010 WL 1946290, at *1 (E.D.N.Y. 2010) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). A single incident described in a complaint, particularly one that involves actors below the policymaking level, does not raise an inference of the existence of a policy or custom.

Hartnagel v. City of New York, 2012 WL 1514769, at *4 (E.D.N.Y. 2012); Gordon v. City of New York Police Dept. 84th Precinct, (E.D.N.Y. 2012) ("'Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker.'" (quoting City of Oklahoma v. Turtle, 471 U.S. 808, 823-24 (1985)).

In support of his claims against the City, the plaintiff alleges only that the City, the NYPD, and the DOC failed to properly train and supervise its employees to provide the plaintiff with adequate medical care. (Compl. ¶¶ 14, 17-18, 30.) These allegations, without more, are insufficient to support a Monell claim against the City, and the isolated incident described in the complaint is not sufficient to support an inference that the police officer defendants acted pursuant to a municipal policy or custom. See Walker v. City of New York, 2007 WL 1340252, at *2 (E.D.N.Y. 2007) (dismissing complaint against City of New York where "even liberally construing plaintiff's claim, nothing suggest[ed] that the alleged constitutional violations were attributable to any municipal policy or custom"). Accordingly, the plaintiff's claims against the City shall be dismissed, unless the plaintiff filed an amended complaint within thirty (30) days of this order that alleges facts suggesting that the alleged constitutional violation can be attributed to an official municipal policy or custom.

C. The Long Island University Hospital and John Doe #1

The plaintiff names as a defendant "L.I.U. Long Island University Hospital Brooklyn Campus" but, as far as the Court can tell, there is no such hospital. The Court presumes that the plaintiff intended to name University Hospital of Brooklyn at Long Island College Hospital ("Long Island College Hospital") which is a part of the State University of New York ("SUNY")

Downstate Medical Center. See http://www.downstate.edu/lich/ (Last visited June 19, 2012). If this is the hospital the plaintiff intends to name, then the plaintiff's § 1983 claims against the Hospital are barred by the sovereign immunity protection of the Eleventh Amendment because this hospital is a branch of SUNY. See Dube v. State University of New York, 900 F.2d 587, 594–95 (2d Cir. 1990) (Eleventh Amendment bars § 1983 suit against SUNY, which is an integral part of the State of New York); Ding v. Bendo et al., 2006 WL 752824, at * 3-4 (E.D.N.Y. 2006) (dismissing plaintiff's § 1983 claims against SUNY Downstate Medical Center because "SUNY and the defendant doctors in their official capacity enjoy immunity from suit under the Eleventh Amendment"); Cassells v. Univ. Hosp. at Stony Brook, 1987 WL 3717 (E.D.N.Y. 1987) (holding that Eleventh Amendment barred suit against State University Hospital).

Similarly, insofar as the plaintiff asserts claims against the John Doe #1, the attending physician at the Long Island College Hospital, in his official capacity as a physician, the Eleventh Amendment shields the physician from suit as well. See Ding, 2006 WL 752824, at *4 (holding that Eleventh Amendment immunity extends to SUNY doctors acting in their official capacity); Castells, 1987 WL 3717, at *4 (holding that SUNY employees are "also entitled to claim Eleventh Amendment immunity from damages for actions taken in their official capacities.").

To the extent that the plaintiff seeks to assert a claim against John Doe #1 in his individual capacity, that claim would fail on the merits. The plaintiff alleges only that "the attending physician (JOHN DOE #1) refused to contact the Veteran Hospital to find out the medication I was prescribed and did prescribe me the wrong medication causing further damage to my eyes." (Compl. ¶ 15.) At best, this allegation would support a finding that the attending physician was negligent. However, allegations of negligent medical treatment, even those which rise to the level of medical malpractice, do not state a valid claim for medical mistreatment under the Eighth

Amendment. Martinez v. Ravikumar, 616 F. Supp. 2d 455, 458-59 (S.D.N.Y. 2009) ("'Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'" (quoting Estelle v. Gamble, 429 U.S. 97, 107 (1976)); Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

For these reasons, any claims brought by the plaintiff against the Long Island College Hospital and the John Doe attending physician at the Long Island College Hospital are dismissed. If the plaintiff intended to name a different hospital unaffiliated with the State University of New York, the plaintiff shall file an amended complaint within 30 days of the date of this order naming the correct hospital.

## CONCLUSION

Accordingly, it is hereby:

ORDERED that plaintiff's claims against the New York City Police Department, Commissioner, the New York City Department of Corrections, Commissioner, LIU Long Island University Hospital, Brooklyn Campus, and John Doe #1, Long Island University Attending Physician, are hereby dismissed. No summons shall issue as to these defendants, and it is further

ORDERED that the plaintiff's claims against the City of New York are dismissed unless the plaintiff files an amended complaint stating a plausible Monell claim against the City of New York within thirty (30) days of this Order. If the plaintiff intended to name as a defendant a different hospital unaffiliated with the State University of New York, the amended complaint shall also name that defendant. The amended complaint must be captioned, "Amended Complaint," and shall bear the same docket number as this order. It is further

ORDERED that the United States Marshals Service is directed to serve the summons and complaint upon the remaining defendants, without prepayment of fees, and it is further

ORDERED that a courtesy copy of the summons, complaint, and this order shall be served upon the Corporation Counsel for the City of New York, Federal Litigation Unit.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Dated: Brooklyn, New York
July 23 2012

S/Chief Judge Amon

Carol Bagley Amon
Chief Judge, United States District Court